**138 Nev., Advance Opinion 18**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| RUTH L. COHEN, AN INDIVIDUAL, Appellant, vs. PAUL S. PADDA, AN INDIVIDUAL; AND PAUL PADDA LAW, PLLC, A NEVADA PROFESSIONAL LIMITED LIABILITY COMPANY, Respondents. | No. 81018 |



FILED

MAR 3 1 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

No. 81172

| |
|---|
| PAUL S. PADDA, AN INDIVIDUAL; AND PAUL PADDA LAW, PLLC, A NEVADA PROFESSIONAL LIMITED LIABILITY COMPANY, Appellants, vs. RUTH L. COHEN, AN INDIVIDUAL, Respondent. |

Consolidated appeals from a district court summary judgment and order denying attorney fees. Eighth Judicial District Court, Clark County; Elizabeth Gonzalez, Judge.

*Reversed in part, vacated in part, and remanded.*

Campbell & Williams and Philip R. Erwin, Donald J. Campbell, and Molly M. Higgins, Las Vegas; Hayes Wakayama and Liane K. Wakayama, Dale A. Hayes, Jr., and Jeremy D. Holmes, Las Vegas, For Appellant/Respondent Ruth L. Cohen.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, and Abraham G. Smith, Las Vegas; Paul Padda Law, PLLC, and Paul S. Padda, Las Vegas; Donald L. Fuller, Attorney at Law, LLC, and Ryan A. Semerad Casper, Wyoming, for Respondents/Appellants Paul S. Padda and Paul Padda Law, PLLC.

22- 09999

Milan Chatterjee, Las Vegas,
for Amici Curiae Jay Bloom, South Asian Bar Association of Las Vegas, and
Veterans in Politics International, Inc.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

### OPINION

By the Court, STIGLICH, J.:

Just like other businesses, law firms routinely merge and disband. In this case, we are asked whether an attorney who enters into a fee-sharing agreement with a member of her law firm, departs from the firm, and is later suspended from the practice of law may receive legal fees recovered by the firm during her suspension.

We hold that she can, so long as she completed her work on the cases subject to the agreement prior to her suspension and given that her suspension was unrelated to her conduct in those cases. Those requirements were met here. We therefore reverse the district court's order and remand for further proceedings consistent with this opinion.

### BACKGROUND

Ruth Cohen and Paul Padda formed a law practice in 2011. In 2014, Padda and Cohen entered into a fee-sharing agreement (Dissolution Agreement) dissolving their law practice. The Dissolution Agreement entitled Cohen to a 33.333% share of attorney fees (Expectancy Interest)

---

[1]The Honorable Elissa F. Cadish and the Honorable Abbi Silver, Justices, voluntarily recused themselves and took no part in the consideration of this appeal.

recovered in all contingency cases for which the law practice had a signed retainer agreement prior to December 31, 2014, the date of the Dissolution Agreement. The parties identify three cases that were subject to the Dissolution Agreement.[2]

In 2016, Cohen and Padda entered into a Business Expectancy Interest Resolution Agreement (Buyout Agreement), in which Cohen exchanged her Expectancy Interest for $50,000. Cohen now maintains that Padda and his new law firm (collectively, the Padda Parties) misrepresented the status and number of cases in which she had an Expectancy Interest before they signed the Buyout Agreement, that the Padda Parties were only paying her 30% of the attorney fees instead of 33.333% as required per the Dissolution Agreement, and that Padda had instructed employees to not disclose any documents to Cohen that reflected settlement figures and attorney fees collected.

In April 2017, Cohen's law license was suspended for failing to complete the 2016 continuing legal education requirements required per SCR 210. Cohen refused to pay the fee required to be reinstated out of "protest," and her license remained suspended until December 2019. Prior to her suspension, one of the three cases in which Cohen had enjoyed an Expectancy Interest was resolved. The remaining two cases covered by the Dissolution Agreement were resolved during Cohen's suspension. It is undisputed that Cohen did not work on these two cases while her law license was suspended.

---

[2]Cohen appears to contend that there were other cases subject to the Dissolution Agreement but does not identify the names of those cases or when they were resolved in her briefing. We therefore focus our discussion on the three cases identified by the parties.

While her suspension was still in effect, Cohen sent the Padda Parties a letter demanding payment of attorney fees subject to the Expectancy Interest in the Dissolution Agreement. Cohen argued the Buyout Agreement should be rescinded due to the Padda Parties' fraudulent acts, misrepresentations, and omissions. The Padda Parties refused, and Cohen sued the Padda Parties, claiming fraud, breach of fiduciary duty, and breach of contract, among other things. Cohen sought more than $3,000,000 in damages that she alleged represented the amount of her Expectancy Interest in the pending cases. The Padda Parties made an offer of judgment pursuant to NRCP 68 for $150,000. Cohen did not accept the offer.

The Padda Parties moved for summary judgment, asserting that Cohen's suspended law license made her a "nonlawyer" and determining that fee-sharing with her was prohibited under RPC 5.4(a). The district court granted summary judgment on that basis and dismissed Cohen's tort claims.

Cohen thereafter filed a motion for reconsideration, in which she submitted legal authority from other jurisdictions that permit fee-sharing agreements with suspended or disbarred lawyers so long as they transfer their cases before suspension or disbarment and are no longer involved in those matters. The district court denied Cohen's motion, determining that the legal authority Cohen referenced did not render the district court's summary judgment clearly erroneous.

The Padda Parties moved for attorney fees under NRCP 68 due to Cohen's rejection of the offer of judgment. Cohen contended that her rejection of the offer was reasonable given the strength of her case and the amount of damages she was seeking. The district court denied the Padda

Parties' motion, applying the *Beattie*[3] factors and finding that although the timing of the offer was reasonable, Cohen's decision to reject the offer was not grossly unreasonable or in bad faith.

Cohen appeals, challenging the district court's orders granting summary judgment and denying the motion for reconsideration. The Padda Parties appeal the district court's order denying attorney fees. Amici curiae, South Asian Bar Association of Las Vegas, Veterans in Politics International, Inc., and Jay Bloom, filed a brief in support of the district court's summary judgment in favor of the Padda Parties. This court has consolidated the appeals in the interest of judicial economy. *See* NRAP 3(b).

## DISCUSSION

*Cohen did not waive her legal arguments by raising them in the motion for reconsideration*

As a preliminary issue, the Padda Parties contend that Cohen waived her legal arguments presented in this appeal because she raised them for the first time in her motion for reconsideration below and argue that the district court did not engage with these arguments on the merits. In response, Cohen maintains that this court may consider her arguments because the reconsideration briefing and order are part of the record and because the district court elected to entertain the motion for reconsideration on the merits.

In *Arnold v. Kip*, 123 Nev. 410, 168 P.3d 1050 (2007), this court established a two-part test to determine whether a motion for reconsideration preserves arguments for appeal. First, the order denying reconsideration must have been entered before the notice of appeal was filed, such that the reconsideration motion and order are part of the record

---

[3]*Beattie v. Thomas*, 99 Nev. 579, 668 P.2d 268 (1983).

 

on appeal. *Id.* at 416-17, 168 P.3d at 1054. Second, the district court must have entertained the motion on its merits. *Id.* at 417, 168 P.3d at 1054. Should these two elements be met, this court "may consider the arguments asserted in the reconsideration motion in deciding an appeal from the final judgment." *Id.*

The *Arnold* test has been met here. First, the order denying reconsideration was entered prior to the date when the notice of appeal was filed. Thus, both the motion for reconsideration and the order denying it are properly part of the record on appeal. *Cf. id.* at 416-17, 168 P.3d at 1054. Second, we conclude that the district court entertained the motion to reconsider on its merits. The district court determined that its summary judgment order was not clearly erroneous or subject to reconsideration based on the new authorities and arguments Cohen presented in her motion for reconsideration. Further, the district court thereafter engaged with Cohen's legal arguments, stating that "the authorities Ms. Cohen cites in her Motion do not apply" and explaining its reasoning. The district court's analysis entertaining Cohen's arguments on the merits is sufficient to meet the second prong outlined in *Arnold*. Therefore, we determine that Cohen did not waive the legal arguments she presents on appeal and address the merits of those arguments.

*The Dissolution Agreement was enforceable because Cohen's suspension was unrelated to the cases in which she enjoyed an Expectancy Interest*

Cohen contends that the Expectancy Interest provision of the Dissolution Agreement is enforceable notwithstanding her suspended law license because the parties entered into the Dissolution Agreement before her suspension and because the Dissolution Agreement did not require her to work on the cases in which she enjoyed an Expectancy Interest. The Padda Parties argue that Cohen's suspension from the practice of law

SUPREME COURT
OF
NEVADA

(O) 1947A

6

prohibits her from receiving any legal fees earned during her suspension, and thus the district court's summary judgment in favor of the Padda Parties was proper. We review the district court's summary judgment order de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).

RPC 5.4(a) provides that a "lawyer or law firm shall not share legal fees with a nonlawyer." Whether a suspended attorney may receive compensation for work completed prior to and unrelated to her suspension is an issue of first impression in Nevada. We therefore examine the approaches taken by other jurisdictions in cases with similar facts to inform our own.

In *Lee v. Cherry*, the Texas Court of Appeals considered whether an attorney was entitled to a referral fee for a case that settled after he resigned his law license. 812 S.W.2d 361, 361 (Tex. App. 1991). When the referring lawyer requested his referral fee, the other attorney refused on the grounds that the referral agreement was void because Texas rules of professional conduct prohibit sharing legal fees with a nonlawyer. *Id.* at 362. It was undisputed that the referring lawyer had no further duties after the contract was fully executed (i.e., when he referred the case) and that the lawyer's resignation was unrelated to the referral fee case. *Id.* The court held that the referring lawyer could receive attorney fees because he had completed all his contractual duties prior to surrendering his law license and because the client approved of the referral fee contract. *Id.* at 363. A contrary holding "would do serious damage to legitimate contract rights." *Id.* at 364.

The Supreme Court of Iowa considered a similar situation. *West v. Jayne*, 484 N.W.2d 186 (Iowa 1992). An attorney, George West,

SUPREME COURT
OF
NEVADA

(O) 1947A

entered into a contingency-fee agreement with an associate at West's firm. *Id.* at 188. A few years later, West was disbarred for conduct unrelated to the cases covered under the agreement. *Id.* In relevant part, the dispute in this case was whether West was prohibited from earning legal fees after he was disbarred. *Id.* at 190. The *West* court noted,

> It is a common practice for attorneys who work together as associates to afford the attorney who secures business, or clients, a percentage of the eventual fee, regardless of whether that attorney performed the legal services or whether other members of the association completed the work. Except for possibly overseeing the work, the attorney securing the client completes his portion of the work and is entitled to a percentage of the eventual fee at the time he turns the client's work over to another member of the association.

*Id.* Therefore, the court held that West was entitled to the legal fees not withstanding his disbarment because he completed his services before disbarment. *Id.* However, the court limited its holding to cases in which legal fees were divided amongst lawyers who were associates at the same firm. *Id.*

In reaching its conclusion, the *West* court relied on *Sympson v. Rogers*, 406 S.W.2d 26 (Mo. 1966), for support. *West*, 484 N.W.2d at 190-91. In that case, the parties entered into a fee-sharing agreement with the knowledge that one attorney to the agreement was about to surrender his law license.[4] 406 S.W.2d at 32. The court ruled that this contract was

---

[4]The record in *Sympson* was unclear as to whether the disbarment had any connection with the attorney's conduct in the cases covered by the fee-sharing agreement. *Sympson*, 406 S.W.2d at 27.

SUPREME COURT
OF
NEVADA

(O) 1947A

enforceable because it was an agreement between licensed attorneys for legal services already rendered at the time at which it was entered. *Id.*

Several state bar ethics opinions are in accord. For example, while the Connecticut Bar Association's Committee on Professional Ethics noted that, on its face, Connecticut's analog to RPC 5.4 strictly prohibits fee-sharing with a suspended lawyer, "such a strict construction" would not advance the policy rationale behind the rule, which is "to protect the lawyer's professional independence of judgment." *Conn. Bar Ass'n Comm. on Prof'l Ethics*, Informal Op. 2013-01 (2013) (internal quotation marks omitted). Therefore, the Committee decided that the rule does not issue such a blanket prohibition where: (1) a right to receive the fee existed and accrued before the suspension; (2) the suspension was unrelated to the client or case that generated the fee; and (3) the payment is made in a manner consistent with applicable rules and statutes. *Id.* So too did the New York State Bar Association's Committee on Professional Ethics determine that a disbarred attorney may share in fees for work performed before disbarment, so long as the disbarment was unrelated to the matter in which the fees were earned. *N.Y. State Bar Ass'n Comm. on Prof'l Ethics*, Op. 609 (1990).

These authorities are instructive. It is true that Cohen's suspended law license made her a nonlawyer per RPC 5.4(a) from April 6, 2017, to December 19, 2019. *Cf.* NRS 7.285(1)(b) (prohibiting a person with a suspended law license from practicing law); SCR 77 (requiring every practicing attorney to be an active member of the state bar). Similarly, the Nevada State Bar has determined that "an attorney's fee in a contingent fee case has not been earned until there is a recovery," and the record reflects that recovery in two of the three cases in which Cohen enjoyed an

Expectancy Interest occurred while her law license was suspended. *State Bar of Nev. Standing Comm. on Ethics & Prof'l Responsibility*, Formal Op. 18 (April 29, 1994). However, Cohen completed her work on these cases before she was suspended, and her suspension was unrelated to her professional conduct in these cases.[5] *Cf. Lee*, 812 S.W.2d at 363 (noting that the referring attorney had no further duties after entering into the referral fee contract); *West*, 484 N.W.2d at 190 (determining that the disbarred attorney was entitled to compensation because he completed his work on the cases encompassed by the fee-sharing agreement prior to disbarment and observing that his disbarment was unrelated to his work on those cases). Furthermore, Cohen and Padda were members of the same firm, and both held valid law licenses, at the time they entered into the Dissolution Agreement. *See West*, 484 N.W.2d at 190 (concluding that a fee-sharing agreement between attorneys at the same firm is enforceable even though one attorney is later disbarred); *Sympson*, 406 S.W.2d at 32 (enforcing a fee-sharing agreement that was entered into while all parties had valid law licenses); *see also Eichen, Levinson & Crutchlow, LLP v. Weiner*, 938 A.2d 947, 951 (N.J. Super. Ct. App. Div. 2008) (concluding that a disbarred attorney's interest in referral fees vested at the moment the contracts were entered into, at which time his license was valid). Preventing Cohen from receiving her Expectancy Interest would not advance RPC 5.4(a)'s policy objective of protecting attorneys' professional judgment. *Conn. Bar Ass'n Comm. on Prof'l Ethics*, Informal Op. 2013-01 (2013). Indeed, such a narrow construction of RPC 5.4(a) "would do serious

---

[5]As the Padda Parties concede in their answering brief, Cohen stopped working on these two cases before her law license was suspended in 2017.

damage to legitimate contract rights" by rendering unenforceable a contract that was valid at the time it was fully executed due to a party's unrelated conduct. *Lee*, 812 S.W.2d at 364; *Eichen*, 938 A.2d at 951.

The Padda Parties present several cases they claim favor their position, but only one of which arguably does. In *Lessoff v. Berger*, a New York appellate court determined in a slip opinion that a suspended attorney is not permitted "to share in fees during the period of his suspension." 767 N.Y.S.2d 605, 606 (App. Div. 2003). However, *Lessoff*'s applicability to the case at bar is limited, as it does not mention whether the suspended attorney entered into a fee-sharing agreement prior to his suspension or whether he had further responsibilities "with respect to the cases that were open at the time of his suspension." *Id.* Therefore, we conclude that the Padda Parties' citation to *Lessoff* is unavailing.

Amici rely on a Nevada State Bar Ethics Opinion to support their claim that Cohen is entitled, at most, to recover in quantum meruit the reasonable value of services she rendered in the cases in which she enjoyed an Expectancy Interest.[6] *Cf. State Bar of Nev. Standing Comm. on Ethics & Prof'l Responsibility*, Formal Op. 18 (April 29, 1994). Their reliance on the ethics opinion is misplaced, as it addressed the portion of a contingency fee to which a discharged attorney was entitled. There is no client discharge at issue in this case, as Cohen and Padda were members of the same firm at the time that they entered into the Dissolution Agreement. Therefore, amici's citation to this ethics opinion as support for their claim that "long-standing authority in Nevada" has already addressed this issue

---

[6]A party that pleads quantum meruit seeks recovery of the reasonable value for services rendered. *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 379, 283 P.3d 250, 256 (2012).

is inapposite. Furthermore, while state bar opinions are persuasive authority, they are not binding. *See* SCR 225(5) (determining that these opinions are "advisory only" and are "not binding upon the courts"); *see also Evans & Luptak, PLC v. Lizza*, 650 N.W.2d 364, 373 (Mich. Ct. App. 2002) (noting that state bar ethics opinions are persuasive but not binding). So even if the formal opinion was on point, it would not necessarily be outcome-determinative in this case.

We are unconvinced by the parade of horribles amici predict will occur as a result of today's holding. They contend that our judgment will (1) "perversely incentivize" attorneys facing suspension or disbarment to enter into contingency-fee agreements and collect those fees after they ultimately are suspended or disbarred, (2) reward attorneys who voluntarily abandon their clients, and (3) injure the public's confidence in the legal profession.

These claims are unfounded. Our ruling today permits attorneys to collect contingency fees in matters *unrelated to* their suspension or disbarment. An attorney who attempts to game her way into an award of attorney fees in a matter *related* to her suspension or disbarment will find no solace in this opinion. And the facts of this case are categorically different to the doomsday scenario presented by amici. Cohen did not enter into the Dissolution Agreement on the eve of her suspension— she did so years prior. Likewise, it is unclear how today's judgment will have a deleterious effect on the public's perception of attorneys. Cohen did not abandon her clients, as amici and the Padda Parties purport; rather,

Cohen completed her work on these cases prior to her suspension.[7] *Cf.
Eichen*, 938 A.2d at 951 (determining that the disbarred attorney was
entitled to his referral fee pursuant to a fee-sharing agreement that did not
require him to perform any additional legal work). Thus, Cohen owed no
duty to clients in the three cases covered in the Dissolution Agreement
while her law license was suspended. *See Lee*, 812 S.W.2d at 363. Finally,
Nevadans of all vocational backgrounds regularly join and leave their places
of employment, and it is unclear why today's judgment would invite "public
cynicism and criticism" when it merely permits attorneys to engage in this
common practice. Again, it bears repeating that a suspended or disbarred
attorney may not receive compensation for work on a case that led to her
suspension or disbarment. No public interest is served by denying an
attorney the benefit of an agreement she reached while her law license was
active.

In its summary judgment order, the district court determined
that the Padda Parties' obligation to pay Cohen her Expectancy Interest
was rendered unenforceable the moment Cohen's law license was
suspended. Because we conclude otherwise, we reverse the district court's
judgment and direct it to address the merits of Cohen's claims. Likewise,
we vacate the district court's order denying the Padda Parties' motion for
attorney fees under NRCP 68 because that decision was predicated on the
district court's summary judgment order. *See* NRCP 68(f); *Pope Invs., LLC
v. China Yida Holding, Co.*, 137 Nev., Adv. Op. 33, 490 P.3d 1282, 1290

---

[7]In fact, as the district court noted, "Nothing in the Dissolution
Agreement required or anticipated that Ms. Cohen would perform work on
the contingency cases that comprised of her Expectancy Interest."

(2021) (reversing an NRCP 68 judgment after the underlying decision was reversed).

## CONCLUSION

Attorneys regularly leave law practices, often signing fee-sharing agreements as they depart. In this case, we hold that a fee-sharing agreement between attorneys with valid law licenses at the time of the agreement is enforceable even when one attorney is subsequently suspended or disbarred, so long as the suspension or disbarment was unrelated to the cases subject to the agreement and the attorney completed her work on those cases prior to her suspension or disbarment. As these requirements were met here, we reverse the district court's summary judgment order in favor of the Padda Parties, vacate its order denying the Padda Parties attorney fees under NRCP 68, and remand for further proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Pickering

_____, J.
Herndon